IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY WEBSTER,

                        Plaintiff,                    OPINION AND ORDER

        v.
                                                      07-cv-226-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended

period, I have assumed administration of the cases previously assigned to him, including this

one, which is an action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Mary Webster seeks

reversal of the commissioner's decision that she is not disabled and therefore ineligible for

Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C.

§§ 416(i) and 423(d).

Plaintiff alleges numerous errors on the part of the administrative law judge and the

Appeals Council.  Specifically, she contends that the administrative law judge improperly

denied her request for a bench decision; incorrectly wrote that she appeared for the hearing

1

in Eau Claire, Wisconsin instead of Minneapolis, Minnesota; improperly relied on vocational expert testimony that was inaudible; ignored her need to use a wheelchair; did not consider her medical records from 2003 to 2006; discounted her husband's statements; and did not consider the combined effect of her impairments.  Plaintiff asserts that the Appeals Council unnecessarily delayed its decision in her case by erroneously considering the wrong record. She generally alleges that these errors deprived her of her constitutional right to fundamental due process.

I find that any errors committed by the adjudicator or the Appeals Council were harmless and did not deprive plaintiff of her fundamental right to due process.  Accordingly, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on April 10, 1956.  AR 621.  She completed the twelfth grade and has worked as a cook and a clerk.  AR 116, 120.  Plaintiff's last insured date was June 30, 2002.  AR 21.

Plaintiff applied for disability insurance benefits on February 19, 2004, alleging disability since September 14, 2001 because of diabetes, high blood pressure, obesity, depression, back and foot problems and alcoholism.  AR 115.  In May 2004, plaintiff completed work and daily activities reports in which she reported that she drives, cooks, cleans house, shops, reads, fixes things, grooms and bathes herself, plays cards and games, visits friends and relatives, talks on the phone, watches movies, goes out to eat and see movies, attends and volunteers at church, pays bills and handles finances.  AR 81-7, 90-5.  Her husband completed a third-party function report, stating that plaintiff could lift 15 to 20 pounds, stand for only five minutes and sit for one to one and a half hours.  AR 96-104.

After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on April 6, 2006 before Administrative Law Judge Michael Quayle in Minneapolis, Minnesota.  Prior to the hearing on March 3, 2006, plaintiff's lawyer submitted photographs of plaintiff and plaintiff's 2005 and 2006 medical records to the Office of Hearings and Appeals.  She also requested that plaintiff not be required to attend the hearing.  After receiving no response to the request, plaintiff and her lawyer attended the hearing.  AR 151.  At the hearing, the administrative law judge heard testimony from plaintiff and a neutral vocational expert, who appeared by live video from Eau Claire, Wisconsin.  AR 621-42.

3

In a letter dated June 15, 2006, plaintiff's lawyer asked the administrative law judge for an expedited decision. AR 616-17. On June 22, 2006, the administrative law judge issued his decision, finding plaintiff not disabled through June 30, 2002, her last insured date. AR 19-27. Plaintiff's attorney then filed two requests for an expedited decision from the Appeals Council. AR 582-93, 607-09. These requests went unanswered. The administrative law judge's decision became the final decision of the commissioner on March 1, 2007, when the Appeals Council denied plaintiff's request for review. AR 11-13.

On April 17, 2007, plaintiff filed this action for judicial review of the commissioner's decision. On May 11, 2007, defendant certified the record on appeal to the district court. At her request, plaintiff's lawyer was granted until October 1, 2007 in which to file a motion for summary judgment because her husband had sustained injuries in a car accident on July 18, 2007.

On November 1, 2007, the commissioner moved to remand the case to the Appeals Council because the record erroneously included another claimant's administrative hearing transcript and did not contain various medical records submitted by plaintiff. Judge Shabaz granted the motion on November 28, 2007. Dkt. ##9-12. On December 21, 2007, plaintiff's attorney allegedly received a letter from the Appeals Council denying her request for review. (Although both the commissioner and plaintiff refer to this letter, it is not part of the record.) Dkt. #26 at 5 and #27 at 2.

4

On February 22, 2008, the commissioner moved to reopen the case and amended the record with the correct hearing transcript.  Dkt. ##13-14.  Magistrate Judge Crocker granted the motion to reopen on March 12, 2008.  Dkt. #16.  The magistrate judge also granted four requests from plaintiff for extensions of time in which to file a motion for summary judgment, which came before the court on August 14, 2008.  Dkt. ## 16, 18, 20-21, and 28.

## B. <u>Medical Evidence</u>

1. <u>Records prior to last insured date</u>

On January 28, 2000, plaintiff was seen in the Stillwater Medical Clinic after a motor vehicle accident.  She complained of headaches and stiffness and pain in her neck and shoulders but had no numbness, weakness or tingling.  The physician noted that plaintiff had normal gait, normal balance and motor and sensory exams and "pretty good" range of motion in her neck and spine.  The physician prescribed Flexeril, a muscle relaxant, and encouraged plaintiff to take Advil and do some stretching exercises.  AR 192.

On July 24, 2000, plaintiff saw Dr. Charles Stevens for a physical examination and reported doing pretty well other than being fatigued, feeling bloated quite often and experiencing some ankle swelling later in the day.  Dr. Stevens noted that her meal pattern was unusual because she ate a large meal at 1:00 a.m. when her husband returned home from

5

work.  Plaintiff said that she took insulin in the morning.  At the appointment, plaintiff weighed 273 pounds.  AR 191.  Dr. Stevens diagnosed plaintiff with poorly controlled diabetes mellitus, high blood pressure and high cholesterol.  He prescribed more insulin and medication for her high blood pressure.  AR 190.

In September 2000, plaintiff saw Dr. Stevens, complaining of a sinus infection and another infection in her toe.  Her examination was normal.  AR 190.  In October 2000, Dr. Stevens saw plaintiff and assisted her in completing a rather complicated health form for the Wisconsin Indian Technical College Health Occupation Program.  He noted that plaintiff's major illnesses were high blood pressure, diabetes and major depression.  AR 189.

Plaintiff did not see Dr. Stevens again until March 5, 2001.  He discussed potential pregnancy risks given her age and diabetes.  Dr. Stevens advised plaintiff that her irregular periods were more related to obesity than to menopause.  Both plaintiff's high cholesterol and diabetes were showing signs of improvement.  Dr. Stevens increased plaintiff's insulin and Lipitor.  AR 188-89.

On September 12, 2001, plaintiff was seen by Dr. Charles Bransford for increasing fatigue, high blood pressure, sleeping all the time, headaches and feeling "poorly".  She weighed 289 pounds.  Dr. Bransford noted that her depression had been well controlled for several years, her joint examination was unremarkable and she had no significant peripheral

cyanosis, clubbing or edema.  Dr. Bransford concluded that plaintiff was severely depressed. He urged her to see a psychiatrist and prescribed Effexor.  AR 186.

On September 25, 2001, plaintiff reported to Dr. Stevens that she had not significantly improved after taking Effexor and had quit her job because of the stress.  Dr. Stevens noted that plaintiff's nerves were intact and symmetric, her diabetes was "in adequate control," her diabetic neuropathy was only slightly painful and her depression had improved slightly with Effexor.  He wrote that he would increase her Effexor dosage if there was no further improvement.  Dr. Stevens listed plaintiff's diagnoses as diabetes mellitus, diabetic neuropathy, obesity and depression.  AR 185.

On January 18, 2002, plaintiff returned to see Dr. Stevens because she had missed three menstrual periods.  Plaintiff reported that she was "doing well" on Effexor.  Dr. Stevens noted that she still was not taking her insulin at the correct time and recommended that she take it thirty minutes before her largest meal of the day.  He indicated that plaintiff's diabetes and hypertension were under poor control.  He noted that plaintiff was pleasant and cooperative but became upset when she was told that she was not pregnant.  Plaintiff weighed 291 pounds.  Dr. Stevens recommended that plaintiff reduce her calorie intake and exercise.  AR 184.

On February 16, 2002, plaintiff saw Dr. Joseph Ardolf, complaining of weight gain and a cough.  Plaintiff weighed 306 pounds and was concerned that she was consistently

gaining weight.  Dr. Ardolf noted that plaintiff had shortness of breath, possibly due to weight gain and anxiety, and increased her Lasix dosage.  Plaintiff reported that her depression was under good control.  AR 183.  Plaintiff saw Dr. Ardolf again on February 20, 2002.  He noted that she had lost four pounds after the increase in Lasix.  She reported that her shortness of breath had improved slightly.  Plaintiff's chest x-ray revealed that her heart was borderline enlarged but that she did not have congestive heart failure.  Dr. Ardolf referred plaintiff for an echocardiogram.  AR 182.

On March 1, 2002, plaintiff was examined by Dr. Stevens, who noted her highly agitated state.  After reviewing plaintiff's records, he noted that plaintiff's renal function was normal and that thyroid disease had been ruled out.  Plaintiff's echocardiogram showed normal left ventricular size and function; however, the images were not ideal due to her size.  Dr. Stevens and plaintiff agreed that she would obtain a new physician.  AR 180.

On March 27, 2002, plaintiff saw Dr. Ardolf, who noted that plaintiff's lower extremity and generalized edema were doing better with hydrochlorothiazide and Lasix.  He noted that she had no diabetic nephropathy.  Plaintiff also reported that her depression was well controlled on Effexor.  AR 179.

On May 16, 2002, plaintiff saw Dr. Jeffrey Sikkink, who noted that she had a lingering sinus infection and chronic cough.  He wrote that plaintiff's depression might be

8

bipolar disorder and suggested that she see a psychiatrist.  He also noted that she had a history of alcohol dependence.  AR 178-79.

2. Records after her last insured date

Plaintiff saw Dr. Bradley Nevins, a licensed psychologist at the St. Croix Medical Center in St Croix, Wisconsin, bi-weekly from January 2003 to October 2004.  AR 240-316. The record also includes physical therapy treatment notes from October 2004 to February 23, 2005.  AR 312-403.  Between October 2004 and March 2006, plaintiff continued to see physicians at the St. Croix Regional Medical Center for her physical and psychological conditions.  AR 404-579.

C.  Consulting Physicians

On November 15, 2004, a state agency physician completed a physical residual functional capacity assessment for plaintiff as of June 30, 2002, her last insured date.  He listed plaintiff's diagnoses as obesity, diabetes and high blood pressure.  He also found that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds and stand, walk or sit for about six hours in an eight-hour work day.  AR 317-23.

On November 16, 2004, state agency psychologist William A. Merrick completed a Psychiatric Review Technique Form for plaintiff, evaluating her affective and substance

addiction disorders as of June 30, 2002.  AR 324-37.  He found that plaintiff had mild difficulties in her activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence or pace.  He also noted that she had experienced no episodes of decompensation.  AR 334.  Merrick also completed a mental residual functional capacity assessment for plaintiff.  He found that she was moderately limited in the following areas:  understanding, remembering and carrying out detailed instructions; completing a normal work day and work week at a consistent pace; performing activities within a schedule; maintaining regular attendance and being punctual within customary tolerances; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and responding appropriately to changes in the work setting.  AR 338-40.

On July 13, 2004, state agency psychologist Anthony J. Matkom completed a Psychiatric Review Technique Form for plaintiff, noting that she had no medically determinable mental impairment as of June 30, 2002.  AR 195-208.

### D.  Hearing Testimony

Plaintiff testified that she currently weighed 335 pounds and was five feet ten inches tall.  AR 622.  She said that she had been using a wheelchair to get around for a week and a half in preparation for attending the hearing.  She can walk about "one small country

10

block." AR 625.  Plaintiff testified that she could no longer dress or bathe herself without assistance or walk without some type of support.  AR 631, 635-36.

Plaintiff testified that she took four shots of insulin a day.  AR 626.  She further testified that she had swelling in her legs because of fluid retention and that she took medication for that.  She also said that she took 12-18 pills a day.  AR 627-28.

Plaintiff testified that she saw a psychologist for weekly therapy sessions.  AR 634. She stated that she had tremors and slept 18 hours a day because of her mental health medications.  AR 635.

The administrative law judge called Sidney Bauer, a neutral vocational expert, to testify via video.  AR 636.  He first asked Bauer whether an individual of plaintiff's age, educational background, work experience and physical condition as of the date of the hearing could perform plaintiff's past work or any work in the economy.  Bauer said no.

The administrative law judge then asked Bauer to assume that the individual was limited to light work with the following limitations:  lifting 20 pounds occasionally and 10 pounds frequently; sitting and standing for six hours in an eight-hour work day; performing low stress, routine work with three to four steps; and having frequent but brief superficial contact with the public, co-workers and supervisors.  He also added that the individual was moderately limited in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms, deal appropriately with changes and

11

maintain a schedule.  AR 638.  Bauer testified that such an individual could not perform plaintiff's past work but could perform other work, namely optical salvager (1,650 jobs in Wisconsin), price marker (1,300 jobs in Wisconsin) and lens matcher (1,600 jobs in Wisconsin) as those jobs existed in 2002.  AR 639.  The administrative law judge asked Bauer whether her testimony was contrary to the <u>Dictionary of Occupational Titles</u> or the Social Security Administration regulations.  She said that if was not.  AR 642.

During cross examination, Bauer testified that an individual who would have to lie down for an hour in the morning and an hour in the afternoon would not be employable. AR 641-42.

At the conclusion of the hearing, the administrative law judge stated that he would decide plaintiff's case as soon as he could but that there were 8,000 cases in his office at that time.  AR 642.

E.  <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity at any time relevant to his decision.  At step two, he found that through her last insured date, plaintiff had severe

12

impairments of diabetes mellitus, diabetic neuropathy, obesity, depression and a history of alcohol dependence.  AR 21.

The administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 22.  In evaluating plaintiff's mental impairments of depression and substance abuse disorder, the administrative law judge found that plaintiff had mild restrictions of activities of daily living and moderate restrictions in social functioning.  He considered the daily activities that plaintiff reported on activity forms that she completed in 2004.  AR 22.  He also found that plaintiff had moderate restrictions in maintaining concentration, persistence or pace because she had not indicated any difficulty concentrating when she was balancing her checkbook, paying her bills and handling her finances.  AR 23.  The administrative law judge noted that plaintiff had not experienced any episodes of decompensation.  He concluded that plaintiff's mental impairments did not meet or equal a listed impairment.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform light work limited to lifting 20 pounds occasionally and 10 pounds frequently; standing, sitting and walking for up to six hours in an eight-hour work day; routine and repetitive tasks with no more than three to four steps in a low stress environment; and only brief and superficial contact with co-workers, supervisors and the

13

public.  AR 22.  In reaching this conclusion, the administrative law judge reviewed the medical evidence in the record.  He noted that although plaintiff had some difficulty controlling her blood sugars, her diabetes mellitus was generally stable with medication.  He noted that plaintiff experienced only mild symptoms secondary to diabetic neuropathy.  The administrative law judge found that plaintiff's depression was well controlled with medication and that she experienced only mild to moderate symptoms secondary to her mental impairments.  He also indicated that there was no evidence that plaintiff had bipolar affective disorder or obsessive compulsive disorder prior to the date that she was last insured.  The administrative law judge did not reduce plaintiff's residual functional capacity to accommodate medication side effects because none were documented in the record.  AR 24-25.

The administrative law judge also considered plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms and found them not entirely credible.  Noting that plaintiff's past earnings in several years were consistent with full-time work and in most years were consistent with part-time and minimal part-time employment, he concluded that plaintiff's underemployment indicated a lack of need for or interest in employment.  The administrative law judge gave significant weight to the opinions of the state agency physicians.  He did not give significant weight to the third-party function report submitted by plaintiff's husband, finding him unqualified to evaluate her disability.  AR 25.

14

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff was not able to perform her past work but that there were jobs that existed in significant numbers in the national economy that she could perform, namely optical salvager, retail marker and lens inserter.  AR 26.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the

15

commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).  Finally, "[w]hen the decision of [the first-line] tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." <u>Sarchet v. Chater</u>, 78 F.3d 305, 309 (7th Cir. 1996).

B. <u>Analysis</u>

Plaintiff asserts that this court must reverse the commissioner's decision because the administrative law judge and the Appeals Council made serious legal mistakes and omissions in reviewing her case.  She also alleges that as a result of these errors, she was denied a fair hearing in violation of her constitutional right to due process under the Fifth Amendment. I will address each of plaintiff's concerns separately.

1. <u>Errors by administrative law judge</u>

16

As an initial matter, I note that some of the errors cited by plaintiff amount only to nitpicking.  Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, 'we give the opinion a commonsensical reading rather than nitpicking at it.'") (quoting Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999)).  Plaintiff takes issue with the fact that the administrative law judge ignored her requests to not appear at the hearing and incorrectly wrote in his written decision that she appeared for the hearing in Eau Claire, Wisconsin instead of Minneapolis, Minnesota.  I agree that the first page of the administrative law judge's decision incorrectly states the following:  "The claimant appeared in Eau Claire, Wisconsin, and the undersigned presided over the hearing from Minneapolis, Minnesota.  Sidney Bauer, M.S., an impartial vocational expert, also appeared at the hearing."  AR 19.  However, a review of the hearing transcript shows that the administrative law judge correctly stated that he, plaintiff, plaintiff's husband and plaintiff's attorney were in Minneapolis, Minnesota and that the vocational expert was appearing via videoconferencing from Eau Claire, Wisconsin.  Plaintiff does not state how this minor error affected the administrative law judge's decision.  Similarly, plaintiff has not explained how being required to attend the hearing prejudiced her request for disability benefits.  Rather, as the commissioner points out, her claim for disability benefits would more likely have been aided by her in person appearance and testimony.

Plaintiff also argues that the administrative law judge's finding that she is not disabled is incredible.  She contends that he ignored obvious evidence of her disability, including her need to use an oversized wheelchair at the hearing, her medical records from 2003 to 2006 and third-party statements by her husband.  However, none of this evidence is material because it postdates plaintiff's alleged disability period.  To receive disability benefits, plaintiff must establish that she was disabled prior to the expiration of her insured status on June 30, 2002.  20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2); Sienkiewicz v. Barnhart, 409 F.3d 798, 802 (7th Cir. 2005).

At the hearing, plaintiff admitted that she had been using the oversized wheelchair for only a week and a half.  Although it is undisputed that the additional medical records submitted by plaintiff were not part of the record until Judge Shabaz remanded her case to the Appeals Council, plaintiff has not shown that they were material to her condition prior to June 30, 2002.  To be material, new evidence must relate to the claimant's condition "during the relevant time period encompassed by the disability application under review." Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990).  Although, as plaintiff argues, these records may have shown the progression of her diseases, they do not show the severity of the diseases at the time relevant to the administrative law judge's decision.  Accordingly, any error the administrative law judge may have made in failing to consider them was harmless.

18

Keyes v. Barnhart, 347 F. 3d 990, 994 (7th Cir. 2003) (harmless error doctrine applies to administrative decisions).

Plaintiff alleges that her husband testified at the hearing about what plaintiff does at home and what he did to help her. Although plaintiff and her attorney specifically recall the testimony, there is no record of it in the transcript or the administrative law judge's decision. The administrative law judge stated only that he did not give significant weight to the 2004 function report completed by plaintiff's husband because he was not qualified to evaluate her disability. Plaintiff argues that his report was not provided for that reason but instead to show the extent of her daily activities. Although plaintiff has a point, the report postdates the relevant disability period. Further, given plaintiff's testimony and other self-reports about her symptoms and limited abilities, her husband's statements (including those allegedly made at the hearing) do not constitute a separate line of evidence, but rather serve to reiterate and thereby corroborate plaintiff's testimony. Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); see also Briscoe ex rel Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir. 2005); Carlson, 999 F.2d at 181. Because the administrative law judge found plaintiff's self-reports not entirely credible, it follows that he also could find her husband's statements unconvincing. Books, 91 F.3d at 980. Accordingly, the administrative law judge did not err by failing to give greater weight to the statements.

I note that in her supporting brief, plaintiff seems to suggest that the administrative law judge erred in making his credibility determination.  However, plaintiff has not developed this argument or explained how the administrative law judge erred.  Therefore, her argument is waived.  Kochert v. Adagen Med. Int'l, Inc., 491 F. 3d 674, 679 (7th Cir. 2007) (undeveloped arguments are waived).

Plaintiff generally challenges the administrative law judge's decision as unreliable, asserting that he failed to consider the combined effect of her impairments or call a medical expert.  I disagree.  When a plaintiff is represented by an attorney, the administrative law judge is entitled to assume that the attorney will make a request for a consultative expert if he or she deems it important.  Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987) (administrative law judge can assume that applicant represented by counsel is "making his strongest case for benefits").  Further, the commissioner correctly notes that the administrative law judge must consult a medical expert only if he concludes that the evidence before him is insufficient to make a determination.  20 C.F.R. § 416.927(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment). I find that substantial evidence supports the administrative law judge's decision.

After considering all of the relevant evidence, the administrative law judge found that plaintiff had the severe impairments of diabetes, diabetic neuropathy, obesity, depression

20

and alcoholism.  Relying on the opinions of state agency physicians and psychologists, he concluded that plaintiff had the residual functional capacity as of June 20, 2002 to perform light work with the following limitations:  lifting 20 pounds occasionally and 10 pounds frequently; standing, sitting and walking for up to six hours in an eight-hour work day; routine and repetitive tasks with no more than three to four steps in a low stress environment; and only brief and superficial contact with co-workers, supervisors and the public.  This finding is well founded.

Prior to June 30, 2002, plaintiff had been diagnosed with diabetes mellitus, high blood pressure, high cholesterol, major depression and obesity.  Although plaintiff had difficulties controlling her diabetes because of her unusual meal pattern, it was generally stable with medication.  She experienced only mild symptoms secondary to diabetic neuropathy.  Plaintiff's depression also was well controlled by medication.  She was encouraged to reduce her caloric intake and exercise for her obesity and was prescribed medication for high blood pressure and high cholesterol.  Plaintiff's edema improved with Lasix.  Her echocardiogram and renal function studies were normal in March 2002.  Although her condition was worsening, as late as May 2004, plaintiff reported that she still drove, cooked, cleaned house, shopped, read, fixed things, groomed and bathed herself, played cards and games, visited friends and relatives, talked on the phone, watched movies, went out to eat and see movies, attended and volunteered at church, paid bills and handled

21

finances.  Finally, plaintiff does not allege that any of her treating physicians assessed her with more restrictive limitations than those stated by the state agency physicians.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff could perform jobs that existed in significant numbers in the national economy. Plaintiff alleges that this was in error because the vocational expert's testimony was inaudible at the hearing.  Recognizing that transcription errors can sometimes be harmless, the Seventh Circuit has held that "[a] litigant who seeks reversal on the ground of a denial of due process that is due to an inaccurate or incomplete transcript is therefore required to make the best feasible showing he can that a complete and accurate transcript would have changed the outcome of the case." Ortiz-Salas v. Immigration and Naturalization Service, 992 F.2d 105, 106 (7th Cir. 1993).  In that case, the court noted that although the transcript of the hearing contained 292 "inaudible" notations, reversal was not required where the plaintiff made no effort to show that the testimony that was not transcribed was material. Id. at 107.  The same is true in this case.

Plaintiff has not cited which portions of the vocational expert's testimony were inaudible, indicating only that she remembers Bauer testifying that plaintiff could not work. However, a review of the hearing transcript does not show that any of the testimony was inaudible or that plaintiff's attorney raised any objections to this effect.  Plaintiff is correct that Bauer discussed the fact that plaintiff could not work.  However, he was referring to

22

plaintiff's condition at the time of the hearing, not as of her last insured date.  Further, plaintiff's lawyer cross examined the expert about whether an individual could perform the jobs identified if the individual had to lie down for an hour in the morning and an hour in the afternoon.  Bauer responded that such an individual would be unemployable.  However, because there is no evidence in the record that prior to June 30, 2002, plaintiff had to lie down for an hour in the morning and an hour in the afternoon, the administrative law judge properly did not include this limitation in his residual functional capacity assessment and did not rely on the expert's testimony concerning the employability of an individual with that limitation.

In sum, I find that the administrative law judge did not make any serious mistakes or omissions that would lead a reasonable trier of fact to reach a different conclusion in this case.

2.  Errors by Appeals Council

Plaintiff argues that the Appeals Council unduly delayed the proceedings in her case. It is unfortunate that although plaintiff applied for benefits on February 19, 2004, she did not receive a hearing until two years later or a final decision until March 1, 2007.  However, the United States Supreme Court has held that because Congress has consistently refused to impose deadlines on the adjudication of disability claims to avoid a potentially adverse

23

affect on the quality of disability adjudications, federal courts do not have the power to impose such deadlines on the disability adjudication process.  Heckler v. Day, 467 U.S. 104, 119 (1984).  In that case, the Court noted that two million disability claims were filed in 1983 and over 320,000 of these claims must be heard by 800 administrative law judges each year.  Id. at 106.  The Court of Appeals for the Seventh Circuit also has noted that Congress did not give federal courts a vigorous role in correctly administrative delay.  Maxon Marine, Inc. v. Director, OWCP, 39 F.3d 144, 147 (7th Cir. 1994) ("The tools available to courts for remedying administrative delay are limited and weak.  There is no Speedy Administrative Proceeding Act.").

While I do not condone the delay that occurred in this case, it does not appear to be abnormal for administrative proceedings in disability adjudications.  At the hearing, the administrative law judge noted that there were 8,000 cases in his office alone at that time.  Given the enormous amount of disability cases waiting to be adjudicated, I do not find the delay to be inexcusable or egregious.

Additional delay occurred after the case was filed in this court on April 17, 2007.  On May 11, 2007, the commissioner inadvertently certified the record that included another claimant's administrative hearing transcript.  Upon discovery of the commissioner's error as well as the absence of the 2005 and 2006 medical records, Judge Shabaz remanded the case to the Appeals Council, which again declined to review the adjudicator's decision.  This court

24

reopened the case on March 12, 2008.  Plaintiff then filed several requests for extension of time in which to file her motion for summary judgement.

Plaintiff has not shown that the commissioner's error was deliberate.  Although I sympathize with plaintiff and can understand her frustration at having to wait for a decision as long as she did, I cannot find that the delay in this case constituted a serious error or omission on the part of the Appeals Council in this case.

In her reply brief, plaintiff also contends that the Appeals Council erred in not reviewing her 2005 and 2006 medical records.  However, as previously discussed, these records were not material to the alleged disability period and therefore would not have changed the outcome of the proceedings.

3.  Denial of due process

Plaintiff claims that she was denied due process because the vocational expert's testimony was inaudible, the administrative law judge's errors made him an impartial decision maker and the Appeals Council unreasonably delayed its decision in her case.  In the administrative hearing context, due process requires that a claimant have the opportunity to confront and cross examine adverse witnesses, the right to retain counsel, the opportunity to view adverse evidence and access to an impartial decision maker whose conclusion is based on rules and regulations and who provides an explanation for the decision.  Goldberg v.

25

<u>Kelly</u>, 397 U.S. 254, 269-71 (1970); <u>Schmoll v. Harris</u>, 636 F.2d 1146, 1151 n.6 (7th Cir. 1980).

In this case, plaintiff was provided a hearing at which she was represented by counsel and testified.  Her counsel was given the opportunity to cross examine the vocational expert. The administrative law judge also issued a written decision with an explanation based on rules and regulations.  Plaintiff does not argue that the administrative law judge was biased against her.  She has not even hinted at any "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."  <u>Liteky v. United States</u>, 510 U.S. 540, 4556 (1994).  Instead, she asserts that the number and severity of the adjudicator's errors deprived her of a fair decision.  However, I have found that no serious or deliberate errors were made by either the administrative law judge or the Appeals Council. Accordingly, I conclude plaintiff's due process rights were not violated.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security, is AFFIRMED and plaintiff Mary Webster's appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 8th day of September, 2008.

BY THE COURT:


/s/

_____
BARBARA B. CRABB
District Judge